UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOHN L. PISONI,<br><br>             Plaintiff,<br><br>     v.<br><br>JOSEPH LEHMAN,<br><br>             Defendant, | Case No. C04-5864RBL<br><br>REPORT AND RECOMMENDATION<br><br>Noted for November 18, 2005 |

This 42 U.S.C. § 1983 civil rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4. Before the court is defendant's motion for summary judgment. (Dkt. # 14). Defendant argues that there is no liberty interest in release to community custody for a person under a sentence structure like plaintiff's and that he is entitled to qualified immunity from damages at the very least.

At issue in this case is whether it was clearly established under the Due Process Clause of the Fourteenth Amendment to the United States Constitution that an inmate is entitled to due process before a release plan is denied, when the inmate is held beyond his or her earned early release date and the inmate is subject to community custody or community placement. Plaintiff has not filed any response to defendant's

REPORT AND RECOMMENDATION
Page - 1

motion. Accordingly, this matter is now ripe for review.

## FACTS

Washington state has implemented an extremely complex sentencing system. Under this system some inmates may earn time off their sentence by programing and good behavior while incarcerated. Other inmates, such as plaintiff, may not earn time off their sentences. Instead, those inmates may become eligible for placement in the community under supervision in lieu of earning good time or earned time.

Plaintiff pled guilty to the charge of child molestation in the first degree in 1998. He was sentenced that same year. At the time he was sentenced, plaintiff was given a term of community placement which was to be served at the end of his sentence in lieu of good time or earned time. (Dkt. # 14, Exhibit 1, Attachment A, p. 3). RCW 9.94A.728 (2) provides:

> No person serving a sentence imposed pursuant to this chapter and committed to the custody of the department shall leave the confines of the correctional facility or be released prior to the expiration of the sentence except as follows:
> ...
>
> (2)(a) A person convicted of a sex offense or an offense categorized as a serious violent offense, assault in the second degree, vehicular homicide, vehicular assault, assault of a child in the second degree, any crime against persons where it is determined in accordance with RCW 9.94A.602 that the offender or an accomplice was armed with a deadly weapon at the time of commission, or any felony offense under chapter 69.50 or 69.52 RCW, **committed before July 1, 2000, may become eligible, in accordance with a program developed by the department, for transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section;**
>
> (b) A person convicted of a sex offense, a violent offense, any crime against persons under RCW 9.94A.411(2), or a felony offense under chapter 69.50 or 69.52 RCW, committed on or after July 1, 2000, may become eligible, in accordance with a program developed by the department, for transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section;
>
> (c) The department shall, as a part of its program for release to the community in lieu of earned release, require the offender to propose a release plan that includes an approved residence and living arrangement. All offenders with community placement or community custody terms eligible for release to community custody status in lieu of earned release shall provide an approved residence and living arrangement prior to release to the community;
>
> (d) The department may deny transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section if the department determines an offender's release plan, including proposed residence location and living arrangements, may violate the conditions of the sentence or conditions of supervision, place the offender at risk to violate the conditions of the sentence, place the offender at risk to reoffend, or present a risk to victim safety or community safety. The department's authority under this section is independent of any court-ordered condition of sentence or statutory provision regarding conditions for community custody or community placement;
> ....

1    Plaintiff had an earned early release date ("EERD") of December 5, 2001, and a maximum release
2    date of September 4, 2002. (Dkt. #14, Exhibit 2, Attachment A, p. 1).  Plaintiff submitted his first plan for
3    possible release into the community to a hotel in Spokane, Washington in late 2001. (Dkt. #14, Exhibit 3,
4    Attachment A, Dep. Transcript 10:15-23).  That plan was investigated by the DOC, but because the hotel
5    stated that it did not have room for plaintiff and would not be accepting any sex offenders for the next
6    three years, it was denied. Id. at Dep. Transcript 11:1-13, 16-24; 12:1.

7    Plaintiff submitted a second release plan to the Union Gospel Mission in Aberdeen, Washington,
8    but as the Union Gospel Mission also refused to accept him because he was a sex offender, this second
9    plan was denied as well. Id. at Dep. Transcript 12:4-25.  Plaintiff submitted a third release plan to the
10   Interaction Transition ("IT") House in Seattle, Washington.  That plan again was denied by the DOC,
11   because the IT House also would not accept plaintiff. Id. at Dep. Transcript 13:1-12.  Plaintiff's DOC
12   counselor continued to assist plaintiff in attempting to find a suitable address for release, but ultimately
13   plaintiff was unable to find one. Id. at Dep. Transcript 13:24-25; 14:1-4, 7-9.

14                                   DISCUSSION

15        A.    The standard of review.

16   The court may grant summary judgment "if the pleadings, depositions, answers to interrogatories,
17   and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact
18   and that the moving party is entitled to judgment as a matter of law."  Federal Rule of Civil Procedure
19   ("Fed. R. Civ. P.") 56 (c).  The moving party is entitled to judgment as a matter of law when the non-
20   moving party fails to make a sufficient showing on an essential element of a claim on which the non-
21   moving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

22   There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a
23   rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
24   475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not
25   simply "some metaphysical doubt."). See also Fed. R. Civ. P. 56 (e).  Conversely, a genuine dispute over a
26   material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge
27   or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253
28   (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir.

REPORT AND RECOMMENDATION
Page - 3

1  1987).

2  The determination of the existence of a material fact is often a close question. The court must
3  consider the substantive evidentiary burden that the non-moving party must meet at trial, e.g. the
4  preponderance of the evidence in most civil cases. Anderson, 477 U.S. at 254; T.W. Elec. Service Inc.,
5  809 F.2d at 630. The court must resolve any factual dispute or controversy in favor of the non-moving
6  party only when the facts specifically attested by the party contradicts facts specifically attested by the
7  moving party. Id.

8  The non-moving party may not merely state that it will discredit the moving party's evidence at
9  trial, in hopes that evidence can be developed at trial to support the claim. T.W. Elec. Service Inc., 809
10 F.2d at 630(relying on Anderson, *supra*). Conclusory, nonspecific statements in affidavits are not
11 sufficient, and "missing facts" will not be "presumed." Lujan v. National Wildlife Federation, 497 U.S.
12 871, 888-89 (1990).

13  B.   The doctrine of qualified immunity.

14  Government officials are given qualified immunity from civil liability under § 1983 "insofar as their
15 conduct does not violate clearly established statutory or constitutional rights of which a reasonable person
16 would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In analyzing a qualified immunity
17 defense, the court must determine: (1) what right has been violated; (2) whether that right was so "clearly
18 established" at the time of the incident that a reasonable officer would have been aware of its
19 constitutionality; and (3) whether a reasonable public officer could have believed that the alleged conduct
20 was lawful. See Gabbert v. Conn, 131 F.3d 793, 799 (9th Cir.1997), overruled on other grounds, Conn v.
21 Gabbert, 526 U.S. 286 (1999); Newell v. Sauser, 79 F.3d 115, 117 (9th Cir.1996). The doctrine allows for
22 mistakes in judgement and a government official will not be held liable unless the unlawfulness of the action
23 should have been apparent. Act Up!/Portland v. Bagley, 988 F.2d. 868 (9th Cir. 1993).

24  C.   Analysis.

25  The court begins by noting that an inmate has no constitutional right to release before expiration of
26 his or her sentence. Greenholtz v. Inmates of Nebraska, 442 U.S. 1 (1979). Nor have the Washington
27 State appellate courts recognized an independent state created interest in amassing early release credits. In
28 Re Galvez, 79 Wn. App 655 (1995). This does not, however, end the court's analysis. Under the facts of

this case, plaintiff had the possibility of release to a less restrictive setting subject to approval by the DOC of a release plan.

The court is aware that the interest at issue in this case must be a state created liberty interest and is not an interest found under the Fourteenth Amendment Due Process Clause itself.  Usually the court would first be required to determine whether there is in fact a state created liberty interest.  The Washington State Court of Appeals, Division 1, found there to be a "limited liberty interest" in earned early release credit which requires minimal due process.  In re Crowder, 97 Wn. App. 598 (1999).  No hearing of any type was mandated by Crowder.  Indeed, the court found that Crowder was afforded due process based on the attempts to find suitable community placement, even though his placement occurred 101 days after his earned early release date for community custody.  Crowder, supra at p. 599.

In In re Dutcher, 114 Wn. App. 755 (2002), the same appellate court held that the DOC lacked the authority to impose a policy that prevented an inmate from submitting a release plan, and that prevented its staff from investigating the proposed plan when the inmate has been referred for civil commitment.  The court emphasized it was proceeding under RAP 16.4, which did not require a finding of constitutional violation, but rather only a finding of unlawful restraint under state law.  Dutcher, supra at p. 758 (fn. 3 and 4, citing In re Cashaw, 123 Wn. 2d 138 (1994)).

The plaintiff in Cashaw filed a personal restraint petition ("PRP") which challenged the actions of the Indeterminate Sentence Review Board (the "Board") in setting his minimum prison term to coincide with the remainder of his court-imposed maximum sentence.  The state court of appeals granted the "PRP after concluding the Board's failure to follow its own procedural rules violated Cashaw's due process rights."  Cashaw, supra at p. 140.  While the Washington State Supreme Court affirmed the grant of the PRP, it did so on the ground that "an inmate may be entitled to relief solely upon showing the Board set a minimum term in violation of a statute or regulation." Id.

The state supreme court disagreed, however, with the court of appeals, and found "that no due process liberty interest was created here, for the Board's regulations imposed only procedural, not substantive, requirements." Id.  The supreme court affirmed the notion that "procedural laws do not create liberty interests; only substantive laws can create these interests." Cashaw, supra at p. 145.  Relief was granted in Cashaw by the supreme court under RAP 16.4 on the basis that the Board failed to follow its

REPORT AND RECOMMENDATION
Page - 5

own regulations.

As noted above, the Washington State Supreme Court in <u>Cashaw</u> was careful to grant relief only on state grounds. Indeed, the state supreme court in <u>Cashaw</u> analyzed what is needed to find a state created liberty interest and found no due process violation in that case. The court stated:

> Liberty interests may arise from either of two sources, the due process clause and state laws. <u>Hewitt v. Helms</u>, 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983); <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1089 (9th Cir.1986), <u>cert. denied</u>, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). The due process clause of the federal constitution does not, of its own force, create a liberty interest under the facts of this case for it is well settled that an inmate does not have a liberty interest in being released prior to serving the full maximum sentence. <u>Greenholtz v. Inmates of Nebraska Penal & Correctional Complex</u>, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979); <u>Ayers</u>, 105 Wash.2d at 164-66, 713 P.2d 88; <u>Powell</u>, 117 Wash.2d at 202-03, 814 P.2d 635.
>
> However, as indicated above, state statutes or regulations can create due process liberty interests where none would have otherwise existed. <u>See</u> <u>Hewitt</u>, 459 U.S. at 469, 103 S.Ct. at 870; <u>Toussaint</u>, 801 F.2d at 1089; <u>Powell</u>, 117 Wash.2d at 202-03, 814 P.2d 635. By enacting a law that places substantive limits on official decisionmaking, the State can create an expectation that the law will be followed, and this expectation can rise to the level of a protected liberty interest. <u>See</u> <u>Toussaint</u>, 801 F.2d at 1094.
>
> For a state law to create a liberty interest, it must contain "substantive predicates" to the exercise of discretion and "**specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow**". <u>Kentucky Dep't of Corrections v. Thompson</u>, 490 U.S. 454, 463, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989); <u>Swenson v. Trickey</u>, 995 F.2d 132, 134 (8th Cir.), <u>cert. denied</u>, 510 U.S. 999, 114 S.Ct. 568, 126 L.Ed.2d 468 (1993). **Thus, laws that dictate particular decisions given particular facts can create liberty interests, but laws granting a significant degree of discretion cannot.**

<u>In Re Cashaw</u>, 123 Wn 2d at 144 (emphasis added).

The DOC has been mandated by statute to implement a system that allows for the possibility of early release. For some inmates their release is automatic when they reach their earned early release date because they have no supervision following incarceration. Inmates like the plaintiff, who were sentenced to community placement or community custody, cannot earn this reduction in sentence. Instead, they earn a possibility of being placed on community placement or community custody at the discretion of the DOC. Their release is not automatic.

RCW 9.94A.728(2)(d) grants the DOC the ability and the discretion to deny a release plan for any person who would receive community custody, if the DOC determines the plan may violate conditions of a sentence or supervision, may place the offender at risk to re-offend, or presents a risk to the victim or community safety. Whatever limits have been placed on the DOC, therefore, are not outcome

1    determinative, and under the analysis used in Cashaw there would be no state created liberty interest.  By
2    way of example, the discretion of the DOC has not been limited when the DOC considers how close to a
3    school or day care an offender may reside.  The DOC still has a significant degree of discretion in granting
4    or denying release to community placement or community custody.  The statute itself states the DOC's
5    "authority under this section is independent of any court-ordered condition of sentence or statutory provision
6    regarding conditions for community custody or community placement."  RCW 9.94A.728 (2)(d).

7           In Dutcher, the Washington State Court of Appeals proceeded pursuant to RAP 16.4 (Personal
8    Restraint Petition - Grounds for Remedy).  The court of appeals used a standard of review which did not
9    require the finding of a constitutional violation.  The ruling in Dutcher that the DOC must follow the state
10   statutory system and consider plans on the merits does not equate to a finding of a state created liberty
11   interest in release, and the holding in Dutcher did not eliminate the DOC's discretion.  As noted above, all
12   of plaintiff's release plans were denied for legitimate reasons.  That is, they were denied because none of
13   the addresses submitted by plaintiff would accept him as a resident there.  Further, plaintiff's counselor
14   continued to assist him in finding a suitable address, but all such attempts were unsuccessful.

15          In 1995, the United States Supreme Court examined the methodology used to determine if state
16   laws or regulations created liberty interests in a prison context and the Supreme Court adopted a new
17   approach.  Sandin v. Conners, 515 U.S. 472 (1995).  The Supreme Court stated that "[t]hese interests will
18   be generally limited to freedom from restraint which impose atypical and significant hardship on the inmate
19   in relation to the ordinary incidents of prison life." (Dkt. # 36, p. 12).  The decision in Sandin was a
20   reaction to the practice of combing state regulations for mandatory language to find liberty interests.

21          It is settled that an inmate has no constitutional right to release before expiration of the court
22   imposed sentence.  Greenholtz v. Inmates of Nebraska, 442 U.S. 1 (1979).  Therefore, the refusal to
23   investigate a proposed plan does not lead to violation of a constitutionally protected right.  There is no
24   change in the incidents of normal prison life and the inmate is held until the expiration of his sentence.
25   When the court considers that at the time of sentencing plaintiff was not allowed the possibility of having
26   any unconditional release, this result is not overly harsh.  An inmate has no constitutional right to parole or
27   to any type of automatic release to community custody.  The statute governing plaintiff's sentencing
28   precluded him from earning early release.  The court today does not find a state created liberty interest in

having a release plan considered.

        D.      <u>Qualified Immunity</u>.

Under the doctrine of qualified immunity, officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. fitzgerald</u>, 457 U.s. 800, 818 (1982). Although this court has concluded that there was no constitutional violation, the issue of qualified immunity will also be addressed here. Therefore, the court must determine whether the law governing defendant's conduct was clearly established at the time plaintiff's release plans were denied. This court finds that it was not and that defendant is entitled to qualified immunity.

<u>In re Dutcher</u>, was not decided until December 30, 2002, more than a year after the plaintiff's first release plan was denied. Prior to the state court of appeals' decision in <u>Dutcher</u>, the law in Washington was not clearly established that refusal by the DOC to consider an inmate's release plan was improper. Further, as discussed above, while it is not clear from the record exactly when plaintiff submitted his second and third release plans, all of his proposed plans were denied for legitimate reasons. Accordingly, defendant's motion for summary judgment should be **GRANTED**.

### CONCLUSION

For the reasons stated above the court should **GRANT** defendant's motion for summary judgment. (Dkt. #14).

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have ten (10) days from service of this Report to file written objections. <u>See also</u> Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on **November 18, 2005**, as noted in the caption.

DATED this 27th day of October, 2005.

                                          Karen L. Strombom
                                          United States Magistrate Judge